IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (DUBUQUE) DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>AUSTIN GOODMAN,<br><br>   Defendant. | No. 25-CR-1039<br><br>**BRIEF IN SUPPORT OF<br>MOTION TO DISMISS** |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................2

FACTUAL BACKGROUND ................................................................................................3

ARGUMENT ..........................................................................................................................3

  I.  The Court should dismiss the § 922(g)(4) charge because it is not consistent with our nation's "historical tradition of firearm regulation" and thus infringes on Mr. Goodman's right to keep and bear Arms under the Second Amendment................3

    A.  The Second Amendment protects the conduct Section 922(g)(4) prohibits. ....................................................................................................................5

    B.  Section 922(g)(4) is inconsistent with the nation's history and tradition of firearm regulation.........................................................................................7

  II.  Section 922(g)(4) is unconstitutional as applied to Mr. Goodman. ........................9

III. CONCLUSION.................................................................................................................12

Defendant Austin Goodman is charged in a single-count indictment as being a prohibited person in possession of a firearm and ammunition on September 9, 2025, in violation of 18 U.S.C. §§ 922(g)(4) and 924(a)(8).

Consistent with *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), and persuasive precedent from both before and since that decision, Mr. Goodman moves to dismiss the count against him. *See, e.g.*, *Tyler v. Hillsdale Cty. Sheriff's Dept.*, 837 F.3d 678 (6th Cir. 2016) (holding plaintiff, who had been briefly committed two decades prior, stated plausible claim that permanent disarmament under § 922(g)(4) was unconstitutional as applied to him); *United States v. Rose*, No. 23-cr-34 (N.D. In. filed Dec. 20, 2023) (order granting motion to dismiss indictment) (holding § 922(g)(4) was unconstitutional as applied to defendant who was briefly committed as a child and could not restore his firearm rights under state law).

Mr. Goodman recognizes that although the Eighth Circuit has yet to decide the constitutionality of Section 922(g)(4) since *Bruen*, in other contexts it has relied upon the "assurances" from the Supreme Court that the holdings in *Bruen* and prior cases did not cast doubt on the "longstanding prohibitions on the possession of firearms by felons and the mentally ill." *United States v. Jackson*, 69 F.4th 495, 501–02 (8th Cir. 2023) ("Given these assurances by the Supreme Court, and the history that supports them, . . . there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)."). Other circuits, however, following the standard and reasoning set by *Bruen*, have found these "assurances" unconvincing and the historical tradition unsupportive. The issue presented by this motion is continuing to be litigated across the country, may need to be resolved by the Supreme Court. Recognizing *Jackson*, Mr. Goodman moves the Court to dismiss the charges under § 922(g)(4) against him as unconstitutional under the Second Amendment, both as-applied and facially.

**FACTUAL BACKGROUND[1]**

On November 4, 2024, on an application filed by his father, and after finding clear and convincing evidence for involuntary hospitalization, Goodman was involuntarily committed by the Dubuque County District Court for psychiatric evaluation and treatment provided under Iowa Code § 229.13. Goodman's commitment order provided, under 18 U.S.C. § 922(g)(4), that he was prohibited from possessing any firearms or ammunition. On March 3, 2025, Mr. Goodman was found in possession of a Sig Sauer P365, 9mm pistol.

**ARGUMENT**

**I.** **The Court should dismiss the § 922(g)(4) charge because it is not consistent with our nation's "historical tradition of firearm regulation" and thus infringes on Mr. Goodman's right to keep and bear Arms under the Second Amendment.**

18 U.S.C. § 922(g)(4) provides that it shall be unlawful for any person "who has been adjudicated as a mental defective or who has been committed to a mental institution" to possess in or affecting commerce, any firearm or ammunition. If convicted, Mr. Goodman could face up to fifteen years in prison. 18 U.S.C. § 924(a)(8).

Whether a defendant has been previously committed to a mental institution is a question of federal law, but in making that determination the court must consider state law. *See, e.g.,* U*nited States v. Whiton,* 48 F.3d 356, 358 (8th Cir. 1995). Without conceding otherwise, this motion assumes that involuntary commitment for psychiatric evaluation and treatment under Iowa law fits the definition of "committed to a mental institution" under section 922(g)(4).

Section 922(g)(4) was enacted as part of the Gun Control Act of 1968. *See* Pub. Law 90-618, 82 Stat. 1213, 1220 (Oct. 22, 1968) & Conf. Rep. 90-1956, 1968 U.S.C.C.A.N. 4426 (1968). In

---

[1] The following is based on defense counsel's review of law enforcement reports, affidavits, and other documents that were produced in discovery in this matter. It is not intended as a stipulation of fact.

2022, the Supreme Court issued its decision in *New York State Rifle and Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). *Bruen* significantly limited the test for whether a prohibition against possessing firearms is consistent with the Second Amendment's dictate that the right to keep and bear arms "shall not be infringed." Before *Bruen*, courts applied a two-step "means-end" framework when analyzing statutes prohibiting firearm possession. *United States v. Sitladeen*, 64 F.4th 978, 984 (8th Cir. 2023).

But *Bruen* rejected this test, providing courts with a new two-step analysis for firearm regulations. The first step is straightforward: "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. The Court was also clear "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 2134. *Bruen* expanded upon *Heller*, which held that the Second Amendment protected an individual's right to possess a firearm in their home. *District of Columbia v. Heller*, 554 U.S. 570 (2008). If the Second Amendment's text covers the conduct, then the court should move on to step two, where the "government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. The government must provide a "representative historical analogue, not a historical twin." *Id.* at 2132. Evidence that a societal problem has persisted since the 18th century and gone unregulated is telling. *Id.* at 2131. So too is evidence that earlier generation addressed the problem but do so through materially different means. *Id.*

Section 922(g)(4) fails under this analysis. The statute is unconstitutional both facially and as applied to Goodman.

## A.  The Second Amendment protects the conduct Section 922(g)(4) prohibits.

Step one is established because the Second Amendment protects firearm possession.  In *Bruen*, the Supreme Court reaffirmed its holding that the Second Amendment provides for a personal right to possess firearms.  142 S. Ct. 2111; *cf. McDonald v. City of Chi.*, 130 S. Ct. 3020 (2010); *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008).  *Bruen* explained that this right did not just extend to possession of firearms at one's home, but also extended to the possession of firearms in public for self-defense.  *Bruen,* 142 S. Ct. at 2134.

Moreover, "the people" the Second Amendment protects is not a more limited population than "the people" as described in other Amendments.  *Heller*, 554 U.S. at 580.  Many courts have looked to dicta in *Heller* reassuring that prohibitions on firearm possession by felons and the mentally ill remain presumptively lawful to conclude that those groups are not part of "the people" as described in the Second Amendment.  *See United States v. Gould*, 672 F. Supp. 3d 167, 174–75 (S.D.W. Va. 2023) (collecting cases).  However, *United States v. Rahimi*, which post-dates most *Bruen*-related case law on Section 922(g)(4), clarifies that the "presumptively lawful" language in *Heller* did not remove any category of person from the Court's interpretation of "the people."   In *Rahimi*, the government argued that section 922(g)(8)(C)(i) passed constitutional scrutiny because the Second Amendment "protects only law-abiding, responsible citizens."  Gov't Br. 12, *United States v. Rahimi*, No. 22-915 (U.S. Aug. 14, 2023).  The Supreme Court rejected that argument. *Rahimi*, 144 S. Ct. at 1903.  It further acknowledged the dicta in *Heller* stating firearm prohibitions for felons and the mentally are "presumptively lawful," and consideration of the full statement and context are crucial to assess the significance of this single reference.  The Chief Justice stated:

> Rahimi argues *Heller* requires us to affirm, because Section 922(g)(8) bars individuals subject to restraining orders from possessing guns in the home, and in *Heller* we invalidated an 'absolute prohibition on handguns . . . in the home.' 554

5

U.S., at 636; Brief for Respondent at 32. But *Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' 554 U. S., at 626, 627, n. 26. Op. 15.

Here, the Supreme Court was simply saying that Mr. Rahimi had over-read *Heller*, which on its own terms did not support his position that all gun bans in the home are unconstitutional. The Court was *not* independently endorsing the idea that disarmament of the mentally ill (or formerly mentally ill) are lawful; it was simply noting that *Heller* did not support Rahimi's position. Indeed, the *Rahimi* Court thereafter confirmed that, as in *Heller* and *Bruen*, it was "not 'undertak[ing] an exhaustive historical analysis . . . of the full scope of the Second Amendment,'" and was "only" holding that people who pose a credible threat to others may be disarmed. 144 S. Ct. at 1903.

These statements and others in the decision preclude reading the *Rahimi* majority's single, passing reference to footnote 26 in *Heller* as a "holding" about the constitutionality of section 922(g)(4). It was not. *See also Rahimi*, at 1902 (making clear that the Court was expressly declining to decide whether categorical bans like section 922(g)(4), referenced in *Heller*, were actually lawful); *id.* at 1910 (Gorsuch, J., concurring) ("Nor do we purport to approve in advance other laws denying firearms on a categorical basis to any group of persons a legislature happens to deem, as the government puts it, 'not "responsible."' . . . . Not a single Member of the Court adopts the Government's theory."). *Rahimi* confirms that the Court meant what it said when it declared that the Second Amendment right "belongs to all Americans." *District of Columbia v. Heller*, 128 S. Ct. 2783, 2791 (2008).

The Sixth Circuit, in a case deciding the constitutionality of Section 922(g)(4) also found the mentally ill to be part of "the people" after engaging in a *Bruen*-like analysis. *Tyler v. Hillsdale*

*Cty. Sheriff's Dept.*, 837 F.3d 678 (6th Cir. 2016). Besides, a person who has been committed in the past but has since been released and is living a healthy life is not part of those categories.

**B. <u>Section 922(g)(4) is inconsistent with the nation's history and tradition of firearm regulation.</u>**

The government bears the burden of proving that a challenged law has a representative historical analogue. *Bruen*, 597 U.S. at 33–34. Section 922(g)(4) fares poorly under this portion of the analysis. As *Tyler* acknowledges, "one searches in vain through eighteenth-century records to find any laws specifically excluding the mentally ill from firearms ownership." 837 F.3d at 689 (quoting Carlton F. W. Larson, *Four Exceptions in Search of a Theory:* District of Columbia v. Heller *and Judicial Ipse Dixit*, 60 Hastings L. J. 1371, 1376 (2009)).

The Eighth Circuit has yet to directly address this subsection of 922(g) in light of *Bruen*. However, some district court decisions look to the analysis performed in *United States v. Veasley*, 98 F.4th 906 (8th Cir. 2024). *See, e.g.,* U*nited States v. Franzky,* No. 4:23-cr-40022, 2024 WL 4494988 (D.S.D. Oct. 15, 2024). *Veasley* examined Section 922(g)(3), prohibiting possession of a firearm by a drug user. 98 F.4th at 908. The court analogized the effects of drug use to mental illness before detailing the founding-era laws on firearm possession by the mentally ill. *Id.* at 912–16. The court's historical canvas revealed that pre-Revolution, the mentally ill retained their civil liberties if they posed no danger, but those who did pose a danger faced confinement (which necessarily involved disarmament) and could not legally be provided guns. *Id.* at 913–15. But *Veasley* goes on only to determine whether Section 922(g)(3) is comparable to these historical laws, making no decision on the same with regard to Section 922(g)(4).

*Bruen* requires that the historical analogues be comparable both in terms of *why* a regulation restricted a person's rights and *how* it did so. 142 S. Ct. at 1907. There are several reasons why the restrictions identified in *Veasley* are not analogous to the past commitment clause

of Section 922(g)(4). First, the *why*'s do not match. The laws discussed in *Veasley* addressed those who were presently suffering impairment from a mental illness, but there is no requirement in Section 922(g)(4) that the person disarmed due to past commitment be presently of unsound mind. *Id.*; 18 U.S.C. § 922(g)(4). And no laws indicate people at the time believed that a recovered person, even if they had been previously institutionalized, should lose any rights, including firearm rights.

Second, the *how*'s do not match. *Veasley* identified two outcomes for mentally ill individuals who were considered dangerous: confinement and the inability to be provided a firearm. 98 F.4ᵗʰ at 913–15. Confinement is obviously not an analogous outcome because a person who has previously been committed, but currently poses none of the risks that would lead to commitment, cannot and could not legally be confined against their will. And the prohibition on arming a mentally ill person involved laws punishing the provider of the weapon, not the mentally ill person himself. *Id.* at 915 (citing *Act of Feb.* 4 § 1, 1881 Fla. Laws 87; Act of Mar. 5, § 1, 1883 Kan. Sess. Laws 159). In fact, *Veasley* did not discuss any provision which allowed for disarming a mentally ill person once he had been (legally or illegally) provided a weapon. *Id.* While *Veasley* correctly reasons that these laws show a societal desire to keep firearms out of the hands of dangerous, mentally ill individuals, the only burden these laws placed on the mentally ill person was a difficulty acquiring firearms. Crucially, neither outcome applied to those whose mental health posed a danger in the past, but who were generally healthy in the present.

Third, *Veasley* was decided before the Supreme Court's decision in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). In *Rahimi*, the defendant challenged the constitutionality of Section 922(g)(8), prohibiting firearm possession by those subject to a protective order. The Court affirmed the defendant's conviction under that subsection after finding temporary disarmament

8

under a protective order to be comparable to historical regulations temporarily disarming those found by a judge to be a danger to others. *Rahimi* clarified *Bruen*'s methodology for lower courts analyzing Second Amendment challenges and provided an example for lower courts of what an appropriate historical analogue looks like. *Id.* at 1898.

The historical analogues identified in *Rahimi* closely resembled Section 922(g)(8) as to the *how* and *why*: Both 922(g)(8) and historical laws were aimed at those who were found by a court to be a danger to others and they only called for disarmament while the judicial order remained in place. In light of *Rahimi*, the historical laws regarding disarmament of those previously committed are a total mismatch when compared to the analogues for Section 922(g)(8). With no historical analogue to the past commitment clause of Section 922(g)(4), the statute is facially violative of the Second Amendment.

## II.    Section 922(g)(4) is unconstitutional as applied to Mr. Goodman.

If the statute survives a facial challenge, it is unconstitutional as applied to Goodman. "[D]angerousness was always the touchstone" of pre-founding and founding-era gun laws. Greenlee, Joseph G.S., *Disarming the Dangerous: The American Tradition of Firearm Prohibitions*, 16 DREXEL L. REV. 1, 81 (2024). *See also Kanter v. Barr*, 919 F.3d 437, 464 (7th Cir. 2019) (Barrett, J., dissenting), *abrogated by Bruen*, 142 S. Ct. 2111 (opining "[o]ur precedent is consistent with" the principle "that the state can take the right to bear arms away from a category of people that it deems dangerous."). In *United States v. Cooper*, the Eighth Circuit continued the comparison between the effects of drug use and mental illness for an as-applied challenge to Section 922(g)(3). 127 F.4th 1092, 1095. The court concluded that "only the subset of the mentally ill who were dangerous faced confinement and the loss of arms." *Id.* The court determined that prosecuting Cooper for possession of a firearm would only be constitutional if

Cooper acted like someone who is *both* mentally ill and dangerous. *Id.* at 1096. And by dangerous, the Eighth Circuit means "violent." *United States v. Veasley*, 98 F.4th 906, 913 (8th Cir. 2024).

In light of *Cooper*, Goodman may only be prosecuted under 922(g)(4) if the government can show he is dangerous. It cannot do so.

Goodman was ordered to be involuntarily hospitalized for a psychiatric evaluation and for recommended treatment, including possible medication management. Exhibit A. The Court's order was based on an examining physician, Dr. Adib Kassas, report, which was nothing more than checked boxes with no further explanation than four or five illegible words scrawled out as "diagnosis and supporting observations." Exhibit B. The examining physician did not provide any basis for the findings or further explanation, as required by the form prompts. The report did conclude that Mr. Goodman was treatable and would benefit from treatment. Exhibit B. Dr. Kassas also found that Mr. Goodman was unable to meet his own needs for nourishment, clothing, medical care, and shelter. At the time of the involuntary hospitalization, Mr. Goodman maintained his own home for more than one year (see ECF Doc 15, pg. 1), provided his own basic needs, and was physically healthy.

Prior to the involuntary hospitalization, Mr. Goodman had not been convicted of any crimes in nearly twenty years. ECF Doc 15. Mr. Goodman has no prior convictions for violence or firearms. *Id*. The only significant legal issues he encountered is a recent acquitted charge for extortion and a conviction for Harassment 3rd Degree in a separate case. ECF Doc. 15. He hasn't exhibited any violent behavior and no evidence indicates his possession of firearm had to do with anything besides the exercise of his constitutional rights. By any measure, "dangerous" was not and is not an accurate descriptor for Mr. Goodman.

The government may try to argue that Goodman's as-applied challenge should fail because Iowa has a process for restoration of firearm rights—Iowa Code allows for a person to have a mental health-related firearm disability removed if they can prove they are unlikely to be a danger to the public safety and restoration of the person's firearms rights would not be against the public interest. Iowa Code § 724.31(4). But this is not enough to overcome a constitutional challenge. If a person is no longer dangerous, that alone makes prosecution under Section 922(g)(4) unconstitutional as applied to that person, regardless of whether they have pursued any type of formal restoration process. Reliance on the possibility of restoration of firearms rights unconstitutionally places the onus on the individual to prove they deserve a right that the Constitution already bestows upon them. And it is not an easy burden to meet. To have one's rights restored requires paying court fees and submitting mental health records, criminal history records, and character evidence. Iowa Code § 724.31(3). The court may also require a recent mental health examination. *In re In the Int. of N.F.*, No. 24-0297, 2025 WL 568805, at *10 (Iowa Feb. 21, 2025). For someone like Goodman, this type of process is a major hurdle, and failure for him to pursue this process has no bearing on his dangerousness. Moreover, the Iowa Supreme Court has upheld the denial of restoration on grounds that do not directly relate to dangerousness. *In re N.S.*, 13 N.W.3d 811, 823–25 (Iowa 2024) (affirming denial of firearm rights restoration petition because of petitioner's continued difficulties with his mental health and dishonesty with mental health examiner). Notably, the Iowa Board of Parole reports that success in restoration applications through the executive branch (an alternative to petitions for restoration in the courts requiring the same evidence) is hovering around fifty percent of cases. State of Iowa Board of Parole, *Iowa Board of Parole Annual Report Fiscal Year 2024*, p. 10 (2024), https://bop.iowa.gov/media/17/download?inline.

Because Goodman poses no risk of danger, Section 922(g)(4) is unconstitutional as applied to him.

## CONCLUSION

For the reasons stated above, the court should dismiss the indictment.

Respectfully submitted,

BY: _/s/ Zach D. Crowdes_
Zach D. Crowdes, Asst. Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
222 Third Ave SE, Suite 290
Cedar Rapids, IA 52401
PHONE: (319) 363-9540;  FAX: (319) 363-9542
E-MAIL: zach_crowdes@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE
I hereby certify that on December 5, 2025, I
electronically filed this document with the Clerk of
Court using the ECF system which will serve it on the
appropriate parties.
By: _/s/ Angie McClain_