# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> AUSTIN ANDREW GOODMAN, <br><br> Defendant. | No. 25-CR-1039-CJW-MAR <br><br><br> **ORDER** |

_____

## I.  INTRODUCTION

A Report and Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge, recommending the Court deny defendant's motion to dismiss and deny defendant's motion to suppress, is before the Court. (Doc. 44). The government and defendant both filed objections to the R&R. (Docs. 46 & 47). For the following reasons, the government's objection is **overruled**, defendant's objections are **overruled,** the R&R is **adopted**, defendant's Motion to Suppress (Doc. 39) is **denied**, and defendant's Motion to Dismiss (Doc. 35) is **denied** as to the facial challenge and **held in abeyance** as to the as-applied challenge.

## II.  STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's R&R, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[ ] a de novo review of the disputed portions of a magistrate judge's [R&R]").

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's R&R when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of Judge Roberts' R&R de novo.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (cleaned up) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more exacting standard even if no objections are filed. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### III. DISCUSSION

#### A. Procedural History

On September 9, 2025, a grand jury returned an indictment charging defendant with possession of a firearm by a prohibited person in violation of Title 18, United States Code, Sections 922(g)(4) and 924(a)(8). (Doc. 3). Specifically, the government alleged that on or about March 3, 2025, defendant knowingly possessed a Sig Saur P365 knowing that he had previously been committed to a mental institution. (*Id.*). On December 5,

2

Case 2:25-cr-01039-CJW-MAR   Document 51   Filed 02/02/26   Page 2 of 14

2025, defendant filed a motion to dismiss the indictment. (Doc. 35). On December 8, 2025, he filed a motion to suppress requesting suppression of various items including an Apple iPhone, marijuana, drug paraphernalia, firearms, ammunition, a Lenovo ThinkPad, and the contents of the iPhone and ThinkPad. (Docs. 39 & 39-2). The government filed a resistance to both motions. (Docs. 41 (resistance to motion to dismiss) & 42 (resistance to motion to suppress)).

On December 29, 2025, Judge Roberts held a hearing on the motions. (Doc. 43). At the hearing, the government offered Exhibits 1, 1A, 2, 2A, 3, 3A, 4, and 4A. (Docs. 42-2 through 42-9). Defendant offered Exhibits A and B in support of his motion to dismiss and Exhibits A, B, B-1, C, C-1, D, D-1, E, and E-1 in support of his motion to suppress. (Docs. 36-1, 36-2, and 39-3 through 39-11).

The government called Dubuque Police Officer Nicholas Schlosser as a witness. (Doc. 43). Officer Schlosser testified that he authored four search warrants related to an investigation of defendant. (Doc. 45, at 11–12). Officer Schlosser became involved in investigating defendant in October 2024 when Officer Schlosser learned that defendant was suspected of "distributing paperwork and ongoing harass[ment]" and that there was a "cease and desist letter for [defendant] that [the City Attorney] needed us to serve." (*Id.*, at 12–13). Officer Schlosser explained that defendant "had worked for [his former employer] C.M. for some time. At one point, [defendant] was terminated. C.M. reported that [defendant] then began harassing him." (*Id.*, at 20). "[O]n one occasion [defendant] drove by yelling 'fuck you' at some of the employees working outside of one of C.M's buildings. And traffic cameras did show some employees working outside, [defendant] driving by, slowing down." (*Id.*, at 20–21). In addition, "several of his properties that [C.M.] owns, along with a property that his wife owns, where [defendant] is -- has been served no-trespass orders on, had these documents that he had spread

3

throughout the city and was giving to City councilmembers, were actually inside C.M.'s properties." (*Id.*, at 21). Further,

> C.M. wasn't sure if he -- the buildings were locked, so he wasn't sure -- he didn't believe [defendant] may have entered them but may have slid them under the doors. But also on [October] 28th when he arrived at work that morning -- I believe around 9:00 a.m., C.M. did -- he found on his printer several more of these documents that have been put all over all his properties on his printer. C.M. then reached out to his IT person and was able to find that on two occasions, just prior to all this being done, a laptop computer and an iPhone had logged into the network, the Internet network, and printed off those documents on C.M.'s printer. [Law enforcement] then was able to go through City of Dubuque traffic cameras and found, I believe it was, a black Jeep or a vehicle like that that ultimately was able to read the plate that was registered to [defendant] in the area and/or right outside the building of C.M.'s, which would be around the same time that the server was logged into and those documents were being printed off on Mr. -- on C.M.'s printers, which would have been being done by [defendant].

(*Id.*, at 21–22).

After learning this information, Officer Schlosser authored the first search warrant application, which was for defendant's cell phone. (*Id.*, at 13; Doc. 39-4; Doc. 42-2). Officer Schlosser also authored a second search warrant for "[a]ny electronic devices that can communicate via cell service or internet and or Wi-Fi." (Docs. 39-6 & 42-4). The second warrant was for searching defendant's residence for the electronic devices. (*Id.*). While officers were searching defendant's residence for electronic devices, they saw firearms and evidence of drug use in plain view. (Doc. 45, at 14). Officer Schlosser then authored a third search warrant to search defendant's residence for marijuana, controlled substances, drug paraphernalia, firearms, ammunition, and receipts for the purchase of firearms or ammunition. (Docs. 39-8 & 42-6). Last, Officer Schlosser authored a fourth search warrant to search two devices law enforcement seized—a Lenovo ThinkPad and a silver Apple iPhone—for which the "[d]ates of interest are from

4

09/09/2024 to 10/31/2024." (Docs. 39-10 & 42-8). In addition to the Lenovo ThinkPad and silver Apple iPhone, law enforcement seized marijuana, drug paraphernalia, and firearms from defendant's residence. (Doc. 45, at 14–15).

Officer Schlosser also described a later incident involving defendant at the Dubuque Federal Building ("the Dubuque building") in March 2025:

> while live streaming . . . [defendant] entered the Dubuque building, along with his two dogs. He was dressed in a suit, draped in an American flag, with a marijuana cigarette in his ear. He also had a firearm on his hip. He entered the Dubuque building, entered the elevator, went up to the -- I'm trying to think if – it's either the third or fourth floor --whichever floor the City Council hosts their meetings, entered the floor. At which point, that's when he was stopped by officers before he was able to enter the chambers of the City Council where actual meetings were in session.

(*Id.*, at 16–17). Law enforcement also seized a firearm from defendant that day. (*Id.*, at 17).

Officer Schlosser also testified that he was aware that defendant had previously been mentally committed. (*Id.*, at 17).

On January 9, 2026, Judge Roberts filed his R&R, recommending that the Court deny defendant's motion to dismiss as to defendant's facial challenge and hold in abeyance defendant's as-applied challenge, and to deny defendant's motion to suppress. (Doc. 44). The government and defendant both filed timely objections. (Docs. 46 & 47). The government objects to the section of the R&R pertaining to the motion to suppress only, stating that it "seeks only a small clarification to the recommendation to deny the motion to suppress." (Doc. 46-1, at 1–2). For that reason, the government did "not address the recommendation regarding the motion to dismiss." (*Id.*, at 2 n.1). Defendant objected to the recommendations on both the motion to dismiss and the motion to suppress. (Doc. 47, at 1).

Given that Judge Roberts began his analysis with the motion to dismiss and that the issue could be dispositive, the Court begins there as well.

## B. Motion to Dismiss

As stated, the government does not object to Judge Roberts' conclusions on the motion to dismiss. (Doc. 46-1, at 2 n.1). Defendant objects; his entire objection on this issue is as follows: "Mr. Goodman objects to Magistrate Judge Roberts's denial of the facial challenge to 18 U.S.C. 922(g)(4)." (Doc. 47, at 1).

When it comes to an R&R, Local Rule 72A requires that the objecting party must specify the parts of the R&R to which objections are made, as well providing the portions of the record forming the basis for the objections. LR 72A; *accord* Fed. R. Civ. P. 72. Further, objections must be specific to trigger de novo review. *See Thompson v. Nix*, 897 F.2d 356, 357–58 (8th Cir. 1990) ("We also remind parties that objections must be . . . specific to trigger de novo review by the District Court of any portion of the magistrate's [R&R]."); *see also Dormani v. Target Corp.*, 970 F.3d 910, 916 (8th Cir. 2020) ("To be reviewable, an issue must be presented in the brief with some specificity. That means the [objecting party] must offer more than a cursory and summary statement of the asserted error.").

Here, the Court finds that defendant has waived de novo review on the facial challenge in the motion to dismiss given his failure to present his objection with sufficient specificity. He objected generally to Judge Roberts' final conclusion, but he did not specify why Judge Roberts was incorrect in reaching that conclusion. He did not object to Judge Roberts' recommendation as to the as-applied challenge. Likewise, the government explicitly stated that it is not challenging the recommendation on the motion to dismiss on either challenge and thus agrees to clear error review on this issue. Thus,

the Court will review Judge Roberts' recommendation on the motion to dismiss for clear error.[1]

Judge Roberts concluded that "[t]he facial challenge [to Section 922(g)(4)] before me is identical to the one presented to the Court in *United States v. Clark*, No. 24-cr-2056 (N.D. Iowa April 8, 2025.)" (Doc. 44, at 13). Likewise, Judge Roberts found that "[i]n *Clark*, the defendant asserted the same challenges as [d]efendant herein." (*Id.*). Judge Roberts then concluded, "I see no reason to reach a different conclusion than the Court in *Clark*" and recommended denying defendant's facial challenge. (Doc. 44, at 16).

The Court concluded in *Clark* that Section 922(g)(4) is facially constitutional because "this Nation's historical tradition of disarming individuals who are both mentally ill and dangerous is sufficiently analogous to modern regulations[.]" *Clark*, No. 6:24-cr-2056, at *5. Other courts have relied on similar reasoning as in *Clark* to deny facial challenges to the constitutionality of Section 922(g)(4). *See United States v. Franzky*, 4:23-cr-40022, 2024 WL 4494988, at *4 (D.S.D. Oct. 15, 2024) ("The long history of the prohibition of firearms possession by those who have been determined to be mentally ill supports the constitutionality of such a provision."); *United States v. Walker*, 747 F. Supp. 3d 1195, 1202 (D. Minn. 2024) ("The numerous examples in [*United States v. Veasley*, 98 F.4th 906 (8th Cir. 2024)] of restrictions placed upon persons deemed mentally ill during the Colonial period further supports the Court's conclusion that the prohibition on firearm possession in § 922(g)(4) is constitutional."); *United States v. Gould*, 672 F. Supp. 3d 167, 182–84 (S.D. W. Va. 2023) ("Thus, the societal problem § 922(g)(4) seeks to address is firearm violence by individuals who have been determined to be a danger to themselves or others . . . . Accordingly, because there is a historical

---

[1] To be sure, having reviewed the merits of the argument, the Court's ruling affirming the R&R would remain the same even if the Court reviewed it de novo.

basis for disarming individuals that have been determined to be dangerous to themselves and/or the public at large, § 922(g)(4) is constitutional on its face."); *see also In re N.S.*, 13 N.W.3d 811, 831 (Iowa 2024) (stating in analyzing a challenge to Iowa Code section 724.31 "federal courts reviewing Second Amendment challenges to section 922(g)(4)'s prohibition on firearm possession after a mental health commitment have recognized a 'compelling' government interest in 'preventing crime and preventing suicide'").

There is nothing to suggest this case requires a different conclusion than in *Clark*. Thus, the Court adopts Judge Roberts' recommendation to deny defendant's motion to dismiss as to the facial challenge.

Regarding defendant's as-applied challenge, Judge Roberts recommended holding it in abeyance until trial, again citing *Clark*. (Doc. 44, at 17). In *Clark*, the Court held the defendant's as-applied challenge in abeyance until trial as it found that "there are factual issues related to the elements of the offense that must be resolved by the fact-finder. Because those issues may not be resolved before trial, the Court cannot yet rule on defendant's as-applied challenge." *Clark*, No. 6:24-cr-2056, at *6. The Court has taken a similar approach to as-applied challenges to Section 922(g)(3). *See United States v. Dufauchard*, No. 6:20-cr-2014, at *6 (N.D. Iowa Sept. 23, 2025); *United States v. Thurn*, No. 2:24-cr-1025, at *9 (N.D. Iowa Nov. 20, 2024). The Court is not left with a firm conviction that Judge Roberts committed a mistake in recommending the same approach here.[2]

Thus, the Court finds that Judge Roberts did not clearly err in recommending that the Court deny defendant's motion to dismiss the indictment as to the facial challenge and holding in abeyance as to the as-applied challenge. Defendant's objection on this issue is overruled.

---

[2] Again, the Court's ruling would remain the same even under a de novo review.

### C. Motion to Suppress

Next, the Court addresses defendant's motion to suppress. At the hearing on the motions, the government stated that it was not seeking to admit evidence seized from either the Lenovo ThinkPad or Apple iPhone, in other words, evidence obtained from the first, second, or fourth warrants. (Doc. 45, at 4). Defendant agreed and added "that what's seeking to be suppressed is related to October and November events and not March 3rd." (*Id.*, at 5–6). Thus, in the R&R, Judge Roberts found that the parties' agreement regarding the scope of defendant's motion to suppress had "largely moot[ed] any arguments about all the warrants except the warrant to search for controlled substances, firearms, and ammunition, i.e., the third warrant." (Doc. 44, at 17). More concretely, Judge Roberts found that any analysis of the fourth warrant was unnecessary as "law enforcement was unable to access the devices and the [g]overnment does not intend to offer evidence of their contents at trial." (Doc. 44, at 31). Thus, the Court focuses its analysis on the third warrant and whether it was supported by probable cause.

The Fourth Amendment ensures that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also United States v. Green*, 954 F.3d 1119, 1122 (8th Cir. 2020) ("Under the Fourth Amendment, search warrants must be supported by probable cause."). "Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) (internal quotation marks removed) (citing *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (per curium)); *accord United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) ("If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a

9

crime will be found in a particular place, probable cause to issue the warrant has been established.").

Also, to be supported by probable cause a warrant must contain "evidence of a nexus between the contraband and the place to be searched[.]" *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). In looking for a nexus, courts consider "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999). Conclusory statements are insufficient to demonstrate that probable cause exists. *United States v. Moore*, No. 25-cr-1036-CJW, 2025 WL 3014225, at *4 (N.D. Iowa Oct. 28, 2025) (citing *United States v. Summage*, 481 F.3d 1075, 1077–78 (8th Cir. 2007)).

At the same time, "probable cause is about fair probabilities, not near certainties." *United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021) (cleaned up). "[A] judge may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant . . . [and] law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant[.]" *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000). In addition to allowing for inferences, "[a]s a reviewing court, we pay 'great deference' to the probable cause determinations of the issuing judge or magistrate, and limit our inquiry to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010). Defendant bears the burden of proving the warrant was issued without probable cause. *See Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984) ("As a general rule, the burden of proof is on the defendant who seeks to suppress evidence[.]").

Judge Roberts recited the entire affiant's attachment in the third warrant in his R&R. (Doc. 44, at 5–8). The Court does not do so here, but summarizes that the attachment alleged that C.M. had been dealing with ongoing harassment from defendant;

defendant had created and distributed a letter harassing C.M.; defendant was trespassed from—meaning warned not to enter—C.M.'s properties; after defendant was trespassed, C.M. discovered the harassing letters inside his properties; the doors to the properties were locked, so defendant most likely slid the letters under the doors; around fifty copies of the letter were found on the printer at one of C.M.'s properties; it was likely that defendant accessed C.M.'s wi-fi in order to print; defendant was seen driving by C.M.'s properties and caught on traffic camera doing the same; defendant made threatening statements in text messages and Facebook posts about C.M.; the IT person for C.M. found a new laptop and iPhone connected to the wi-fi at C.M.'s properties after defendant was trespassed and on the day the letters were found at C.M.'s properties. (Doc. 39-8, at 3–4; Doc. 42-6, at 3–4).

After detailing the information within the four corners of the third warrant application, Judge Roberts found that it contained probable cause that evidence of a crime would be found at the place to be searched. (Doc. 44, at 30). He found the third warrant supported by probable cause because the first warrant (for the cell phone) and the second warrant (for electronic devices capable of connecting to wi-fi at defendant's residence) were also both supported by probable cause and were the reasons for eventually needing a third warrant because police discovered the objects in the third warrant while executing the previous warrant. (*Id.*, at 31). In analyzing the first warrant, Judge Roberts found "[a] decade (or more) ago, the failure to spell out the evidentiary value of placing the cell phone at a particular location might have been a more glaring omission. In October 2024, the absence of such an explanation is less troubling." (*Id.*, at 27). Regarding the second warrant, Judge Roberts explained that "[t]he laptop was . . . mentioned in the affidavit as having connected to C.M.'s network at the time [d]efendant was near C.M.s place of business. Moreover, other electronic devices could have been used to make posts or texts relevant to the harassment investigation." (*Id.*, at 29).

11

Defendant objects to Judge Roberts' recommendation, arguing "[t]he affidavit failed to establish probable cause that evidence of a crime would be present on [defendant's] cell phone." (Doc. 47, at 2). In support of this argument, defendant argues that "the majority of [defendant's] conduct offered as support for the criminal behavior are communications to third parties and not C.M. directly," which is required for harassment. (*Id.*). In addition, defendant claims that "[t]here is no information in the affidavit that [defendant] engaged in criminal trespassing." (*Id.*, at 3). Last, defendant objects to Judge Roberts making "the inferential leap that the electronic devices would be stored in [defendant's] residence" given that defendant is seen in his vehicle and outside of C.M.'s business. (*Id.*). For that reason, defendant claims, "[t]he logical place for such items to be searched for would be [defendant's] vehicle." (*Id.*, at 4).

The Court finds, on de novo review, that the third warrant was supported by probable cause.

First, defendant's argument that most of the allegations of harassment were indirect to third parties overlooks the evidence of direct harassment—the copies of a letter left inside of C.M.'s business and on his business printer—which "regard[ed] a lawsuit attacking [C.M.] and his business" and which caused C.M. to report to law enforcement. (Doc. 39-8, at 3; Doc. 42-6, at 3). In fact, the warrant application specifically stated, "[C.M.] is afraid because he knows [defendant] owns firearms, uses drugs and is not mentally stable." (Doc. 39-8, at 3; Doc. 42-6, at 3). Defendant's argument also overlooks the allegation of entry onto C.M.'s property after defendant was warned that a further entry would constitute trespass—that the doors to the business were locked so defendant would have had to slip the letter found on the floor under the door, thus defendant had to have entered onto the property. (Doc. 39-8, at 3; Doc. 42-6, at 3). Thus, the affidavit contained support for the criminal behavior directed at C.M.

Second, there were sufficient allegations that evidence of a crime would be found on the cell phone or laptop and that the cell phone or laptop would be in defendant's residence. As Judge Roberts put it, "it would take an inordinately obtuse reading to the [warrant] application to avoid drawing the inference that [d]efendant was suspected of using his iPhone" as part of his alleged trespass or harassment. (Doc. 44, at 25). The Court finds the same.

We use cell phones constantly. We use them to set alarms, text, play music, watch videos, map driving routes, track workouts, access the Internet, take pictures and videos, play games, and stream movies, in addition to making and receiving phone calls. Because we use cell phones constantly, they are with us constantly. It is reasonable to believe that a person would likely have their cell phone with them, wherever they are, at any given time. Also, the warrant application contained the specific allegation that a laptop and iPhone connected to the wi-fi network at C.M.'s business around the time that harassing letters were printed and left inside the business. That happened after defendant had already been trespassed from all of C.M.'s businesses and had been seen driving by, yelling "fuck you," and in his vehicle in the area.

Also, contrary to defendant's claim, the logical place for the cell phone and laptop is inside of defendant's residence, which is where the warrant requested permission to search. As noted, a person's cell phone is likely to be wherever the person is, including in their own home. A person's residence is also the place they would likely store their belongings, but it is even more likely with electronics because electronics need to be charged and their residence is the easiest place to do so. The Court concludes that this information is sufficient to establish a reasonable probability that evidence of the crimes of trespass and harassment would be found and that there is a sufficient nexus to defendant's residence for both.

Thus, based on the totality of information in the four corners of the third warrant application, the Court concludes, like Judge Roberts, that there was a fair probability that evidence of a crime would be found at defendant's address and the warrant was supported by probable cause. The Court overrules defendant's objection on this issue.

### D. Additional Arguments and Government's Objection

Because the Court has already found probable cause supported the third warrant, the Court need not address the *Leon* good faith exception. *See United States v. Leon*, 468 U.S. 897 (1984). This issue is moot. *Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 650 (8th Cir. 2025) (explaining that an issue is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party"). The Court overrules defendant's objection on this issue as well. Likewise, the Court overrules the government's objection for the same reason.

### IV. CONCLUSION

For these reasons, the government's objection (Doc. 46) is **overruled.** Defendant's objections (Doc. 47) are **overruled**. The Court **adopts** the R&R. (Doc. 44). Defendant's Motion to Suppress (Doc. 39) is **denied,** and the Motion to Dismiss (Doc. 35) is **denied** as to the facial challenge and **held in abeyance** as to the as-applied challenge. Trial remains as scheduled.

**IT IS SO ORDERED** this 2nd day of February, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa